# EXHIBIT A

SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION
Sanjiv N. Singh (SBN 193552)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION
Michael Indrajana (SBN 258329)
1700 S. El Camino Real Suite 503
San Mateo, CA 94402
Phone: (650) 597-0928
Email: michael@indrajana.com

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON
6/20/2023
By ___/s/ Jennifer Torres___
Deputy Clerk

Attorneys for Plaintiffs YAN HE, an individual and successor in interest to the ESTATE OF BRIAN PAN, and BIN PAN, an individual and successor in interest to the ESTATE OF BRIAN PAN.

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

## UNLIMITED JURISDICTION

| | |
|---|---|
| YAN HE, an individual and successor in interest to the ESTATE OF BRIAN PAN; BIN PAN, an individual and successor in interest to the ESTATE OF BRIAN PAN;<br><br>    Plaintiffs<br><br>    vs.<br><br>COUNTY OF SAN MATEO, a public entity; CHILD PROTECTIVE SERVICES OF SAN MATEO, a public entity; CHILDREN AND FAMILY SERVICES OF COUNTY OF SAN MATEO, a public entity; JAMES NAVARRA, an individual; ALICE NAVARRA, an individual; and DOES 1 through 100, inclusive.<br><br>    Respondents. | **Case No.:** 23-CIV-01641<br><br>**COMPLAINT FOR DAMAGES:**<br>**1. Wrongful Death (CCP §377.60)**<br>**2. Negligence Sounding in Wrongful Death**<br>**3. Negligent Supervision Sounding in Wrongful Death**<br>**4. Negligent Hiring and Retention Sounding in Wrongful Death**<br>**5. Violation of Civil Rights (CCP §52.1 and 42 U.S.C. §1983) sounding in Wrongful Death**<br>**6. Survival Action (CCP 377.34)**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs, Yan He and Bin Pan, individually, and as successors in interest of the Estate of Decedent Infant Brian Pan, by and through their attorneys, Sanjiv N. Singh, A Professional Law Corporation and Indrajana Law Group, A Professional Law Corporation, and submit this Complaint for Damages against each of the Defendants named herein. They allege as follows:

## I.    INTRODUCTION

Fifty-four-day old infant Brian Pan, a beautiful baby boy survived also by his twin brother and two-and-a-half year old brother, was suffocated to death by a poorly trained, poorly equipped, under-supervised and sleep deprived San Mateo County foster parent on September 13, 2021. He did not have to die, and his horrible, painful death, literally being crushed by a body many times his size, was entirely preventable. Decedent infant Pan was seized improperly from his mother's care supposedly to protect him but then detained in unsafe conditions indefinitely in a manner that ultimately killed him in a horrific and painful manner. His parents Plaintiff Yan He and Plaintiff Bin Pan, as individuals and successors in interest to Brian Pan, bring this action under the provisions of California Code of Civil Procedure §377.60 and other relevant statutes as set forth below.

## II.    VENUE AND JURISDICTION

1.    Venue is proper in the Superior Court of the State of California, for the County of San Mateo, in that the underlying wrongdoing, acts, omissions, injuries, and related facts and circumstances upon which the present actions are based, occurred in the City of San Mateo, County of San Mateo, California, within the judicial boundaries of the Superior Court of the County of San Mateo. This Superior Court has jurisdiction over the present matter because, as described herein, the nature of the claims and amounts in controversy meet the requirements for unlimited damages jurisdiction.

2.    Plaintiffs have exhausted their administrative remedies by Plaintiff Yan He duly and properly filing notices of claim pursuant to the Government Claims Act (Cal. Govt. Code § 911.2 etc., et. seq.) when she became aware of the factual basis for the claims after the belated release of the autopsy reports and police report. Defendant County of San Mateo initially denied the claims on the basis of timeliness, but then agreed, per stipulation, that there was good cause for the late filing and agreed to a stipulated order permitting filing of the claim late under Cal. Govt. Code § 945.6.  The §

945.6 stipulation and order was signed and entered in the docket by the Superior Court on May 22, 2023, and the Court authorized the filing of this Complaint within 30 days thereof.

## III.    PARTIES

3.      At all relevant times, Plaintiff Yan He was an individual residing in the County of San Mateo, California. She is the biological mother of the deceased infant and therefore successor in interest to the Estate of Brian Pan.

4.      At all relevant times, Plaintiff Bin Pan was an individual residing in the County of San Mateo, California. He is the biological father of the deceased infant and therefore successor in interest to the Estate of Brian Pan.

5.      At all relevant times, decedent infant Brian Pan was a minor child residing in the County of San Mateo, California. His parents are successors in interest to the Estate of Brian Pan.

6.      At all relevant times, Defendant County of San Mateo, ("San Mateo County" or "County") is a public entity organized, existing, and conducting business under the laws of the County of San Mateo and the State of California. County is the employer and principal of all individuals employed by San Mateo County Child Protective Services of San Mateo ("CPSSM") and the Children and Family Services of The County of San Mateo ("CFSSM") that came into contact with decedent infant Brian Pan. On information and belief, based on public record, CPSSM operates under the umbrella of CFSSM. Both entities and their workers have mandatory duties to ensure the safety of children in foster homes, and their duties as such are not discretionary.

7.      At all relevant times, Defendant James Navarra was an individual residing in Pacifica, in the county of San Mateo, California. Defendant James Navarra was one of the foster parents assigned by the County Entity Defendants for the care of decedent infant Brian Pan at the time of his death.

8.      At all relevant times, Defendant Alice Navarra was an individual residing in Pacifica, in the county of San Mateo, California. Defendant Alice Navarra was one of the foster parents assigned by the County Entity Defendants for the care of decedent infant Brian Pan at the time of his death.

9.      Each of Defendants DOES 1 through 50, inclusive, is the agent, employee, supervisor, employer, servant, principal, partner, joint-venturer, or co-conspirator of County, and each was at all

times alleged herein acting within the course and scope of his or her employment and/or with the express authority, ratification, knowledge and consent of his or her employer and/or supervisor. County and DOES 1 through 50 each were in some way responsible for the harm that was sustained by decedent and Plaintiffs as alleged herein and/or cooperated and/or facilitated or contributed to the harm suffered by decedent and Plaintiffs as alleged herein. County and DOES 1 through 50 each also knew and/or should have known and/or were put on notice of the actions of each and every other Defendant listed as DOES 1 through 50 which caused harm either directly or indirectly to each of the Plaintiffs as herein alleged and/or which failed/refused to take action to prevent the harm alleged herein from occurring.

10.     Defendants DOES 51 through 100, inclusive, each is the agent, employee, supervisor, employer, servant, principal, partner, joint-venturer, or co-conspirator of CPSSM and/or CFSSM, and each was at all times alleged herein acting within the course and scope of his or her employment and/or with the express authority, ratification, knowledge and consent of his or her employer and/or supervisor. CPSSM and/or CFSSM and Does 51 through 100 each were in some way responsible for the harm that was sustained by decedent and Plaintiffs as alleged herein and/or cooperated and/or facilitated or contributed to the harm suffered by decedent and Plaintiffs as alleged herein. CPSSM and/or CFSSM and Does 51 through 100 each also knew and/or should have known and/or were put on notice of the actions of each and every other Defendant listed as DOES 51 through 100 which caused harm either directly or indirectly to each of the Plaintiffs as herein alleged and/or which failed/refused to take action to prevent the harm alleged herein from occurring.

## IV.     FACTS COMMON TO ALL CAUSES OF ACTION

11.     Decedent infant Brian Pan was born on July 21, 2021 during the COVID-19 Pandemic. Decedent infant Pan was born to Plaintiff Bin Pan and Plaintiff He by C-section and was a normal, healthy infant. Plaintiff He lived at their home in San Mateo with her three children, husband Plaintiff Bin Pan, and her own parents (i.e., maternal grandparents) who were participating in the care of the children.

12.     On August 7, 2021, an unfortunate disagreement arose between Plaintiff Bin Pan and his father-in-law (i.e., the infant's maternal grandfather). During the course of police intervention in that

disagreement which involved some physical aggression between the father and the grandfather against each other, there were allegations that the decedent infant Brian Pan was dropped on a table by Plaintiff Bin Pan. Plaintiff Bin Pan alleges this was an accident, and regardless it is alleged that it has since been determined and conceded by the County that beyond any doubt this alleged incident *played no role whatsoever* in the ultimate death of the decedent. The documents showing this, including the County autopsy report and comprehensive police report, were not revealed to Plaintiff He until May and August of 2022 respectively.

13.   On the evening of the altercation between the decedent infant's father and maternal grandfather, there was never any allegation or evidence presented of misconduct, abuse, or endangerment by Plaintiff Yan He as the mother or her parents. Plaintiff He is a professional software engineer and the mother of two other healthy children, and at the time of the events in question, Plaintiff Bin Pan was a professional software engineer and engineering executive with no prior criminal history of any kind and also father to the two other healthy children.

14.   Despite this, on or about August 10, 2021, while Plaintiff He's husband, the biological father of the decedent infant, was in custody on a no-bail status, the County seized custody of all three children including the then 19-day-old twins Brian and C.P., and their older brother. Indeed, law enforcement descended upon the family's home and hospital on this one day and took custody of all three children. The twin infants were placed under the care of Alice Navarra, believed to be 73 years old at that time, and James Navarra, believed to be 72 years old at that time, who already had two adopted teenagers in their small house—then believed to be 13 and 19 years old—living with them. Evidence confirms that the Navarras had been told they would only have to care for one infant at a time, but then were shocked to receive two infants and indeed newborn twins. No one from CPSSM or CFSSM or any other branch of Defendant County of San Mateo took appropriate steps to ensure the Navarras were suitable foster parents with proper training, resources, and a proper home environment to care for two newborn twins.

15.   After the removal of all three of Plaintiffs' children from Plaintiff He's custody on August 10, 2021, Plaintiff He repeatedly urged Defendants to return her children to her care. Even if

there were any concerns that the father would pose an ongoing threat to the children, which in reality he did not but which is irrelevant to the disposition and liability in this case, he was removed from the home and incarcerated without bail. Indeed, there was no way for Plaintiff He's husband to be bailed out as his two bail hearings that happened on August 13th, 2021 and August 30th, 2021 confirmed each time that his bail was denied, and there were two restraining orders in place against Mr. Pan from contacting his family or returning to his home.[1] Despite this, for reasons that remain unclear even to this day and reflecting a callous disregard for the sanctity of family bonds with no compelling safety justification, Defendants refused to return Plaintiff He's three children and failed to transfer the twins out of the Navarra home even after they were aware of obvious red flags suggesting the twins were endangered. Plaintiff He was only allowed infrequent, brief periodic supervised visits (for the majority of the relevant time period, only two hours per week total) with her infant twins in an office.

16.     While Defendants continued to refuse to transfer the infant twins back to Plaintiff He supposedly to protect the twins, the twins remained in a foster home in Pacifica with the Navarras. Plaintiffs had no idea that the Navarras were not qualified or appropriately equipped at this time, and had no reason to know this as there was a reasonable assumption, even if they did not agree with the basis for removal, that at the very least the County and its agents would use reasonable care in ensuring the safety of their precious children during the period where the County decided to seize custody of them and place them in foster care. Indeed, during the entire time that the decedent infant Pan was alive and taken from her, Plaintiff He was only permitted visits at offices and had not been allowed to see the infants in the foster home to observe the condition of the foster home or the foster parents' capacity.

---

[1] There are alleged to be significant factual irregularities surrounding the arrest, prosecution and sentencing of Bin Pan, including allegations of concealed evidence regarding Brian Pan's death, not released when it was available and incorrect and/or misleading statements made by investigators and prosecution about Mr. Pan's actions, including what are alleged to be misleading and incorrect statements made by prosecution even on the day of sentencing based on the plea Mr. Pan felt forced to accept. There is evidence to support the allegation that Mr. Pan became a scapegoat for the County and that their continued aggressive prosecution of claims against him and decision to keep him in jail for eight months without bail was possibly motivated by a desire to distract from and obscure the very concerning negligence and misconduct by the County which killed his son.

17.     Tragically, on September 13, 2021, while under the Navarras' supervision and in the placement set up by Defendants, fifty-four-day old Brian Pan was killed. Plaintiff He learned of the death through representatives of Defendants—and then because of the no contact order in place, she could not even share grief or details with her husband Plaintiff Bin Pan, who was forced to have to find out on his own through counsel in the most impersonal way imaginable. In the immediate aftermath of infant Pan's horrific death, Defendants agents, including agents of CPSSM and CFSSM, lead Plaintiffs to believe that Brian was found "unresponsive" and did not disclose that the foster parents were the likely cause of death. Police, acting ultimately in concert with the County DA's office and County Coroner, descended upon the Pan house to seize supposedly relevant evidence making statements as if the death could be somehow tied to the alleged dropping incident. Facts would show that the agents of Defendant San Mateo County all knew, or should have known, the likely cause was the foster parents. Documents obtained later in 2022 show that the narrative of Brian being found unresponsive without explanation (i.e., an explanation which is now believed to have cast doubt over Plaintiff Bin Pan and suggest he may have caused the death when he did not) was being circulated to the presiding family law court as well. In fact, by the evening of the day Ms. He learned of the death, she was visited in person by a Deputy Coroner working for the Defendant County of San Mateo and by a police detective Lucas Thornburg. Detective Thornburg, who gave her his business card, shockingly and obviously prematurely indicated to her that he did not think the foster parents played a role in the death. It is believed and alleged that this narrative was adopted by Defendant County to obscure its own liability and facilitate its ongoing prosecution of Plaintiff Bin Pan.

18.     In fact, it is believed that the autopsy of decedent infant Brian Pan took place on September 14, 2021.

19.     Despite this, following the autopsy, months went by with no autopsy report released and with no disclosure by Defendants on the cause of death of the decedent infant.

20.     Finally, in and around April 3rd of 2022, almost six months later, Plaintiff He was able to finally speak with the Deputy Coroner for Defendant County of San Mateo. On the phone call, the Deputy Coroner for Defendant County stated he thought the death was an accident and did not identify

anyone at fault. Although the applicable statute of limitation for the infant's death was about to pass, the County was still not disclosing cause of death to Plaintiffs and still aggressively prosecuting Plaintiff Bin Pan.

21.     By this time, Plaintiff He had been working with her counsel Emily Andrews to navigate requests made of her for evidence in connection with the criminal case against her husband. While she believed her husband was being prosecuted unfairly, she had no choice but to cooperate. The role of her counsel, Ms. Andrews, was to represent Ms. He's interests in connection with any requests for evidence, testimony, or other requests made of her in connection with her husband's criminal prosecution. Upon learning of the April 3, 2022 phone call to her client, Ms. Andrews learned that the autopsy report was being held for release because of "ongoing criminal investigation by the San Mateo County District Attorney's Office." The Coroner Report was finally obtained by Plaintiff He on May 18, 2022, and it is alleged that the report indicated that decedent's death resulted from "Positional/Compressional Asphyxia." It is also alleged that Pacifica Police Department investigation reports will show that the department, based on its investigation, requested the San Mateo County DA's Office to review the police report for the violations of 192(b) PC (Involuntary Manslaughter) and 273A PC (Child Abuse) committed by Alice Navarra. None of this was told to Plaintiffs until they repeatedly requested disclosure and finally obtained it in August of 2022.

22.     In fact, it is believed that the contents and timing of disclosure of the Pacifica Police Department Report suggests possible concealment of evidence by Defendants because it is believed and alleged to show interviews dating back to the fall of 2021 suggesting potential foster parent liability and thereby implicating Defendants. Specific facts which are believed to be known by the Defendants and others are:

    a.   There was clear evidence, including videos of simulations, witness statements and actual physical evidence, of the foster parent falling asleep in an unsafe position with the decedent child. The positional description is particularly concerning given the Coroner Report stating cause of death as Positional/Compressional Asphyxia.

b.  The foster parents conceded they had only planned for one child, but then received two. The County and Defendants knew this, but charged forward to place the twin infants there.

c.  It is alleged, on information and belief, that the foster parent Alice Navarra, in whose arms the infant baby died, had a complaint against her in April of 2020 for not following proper emergency procedures with a change of another child's medical condition. This prior but very recent complaint and incident were documented and known to agents at CPSSM and CFSSM. In fact, Ms. Navarra had in that incident failed to follow the direct instructions of a San Mateo County Social Worker who had advised her to take a young foster child to an Emergency Room for a rash suggesting a possible allergic reaction. Ms. Navarra disregarded the order and defied it, citing a "prudent parent standard" and her claimed 30 years of experience. The foster child was removed from her care and the child taken to an emergency room where he was finally diagnosed and treated. Any prudent parent or trained foster worker who was reasonably supervised and/or trained and/or informed would have followed instructions given to her. Ms. Navarra did not. The incident was also notable because it showed a practice and pattern of deliberate indifference by Defendants; the social worker who tried to contact Ms. Navarra about the issues with the previous placement did so with a voicemail message, and did not bother to directly or in a timely manner follow up on the issue until, as alleged, the next day.

d.  In a similar fashion, evidencing the same deliberate indifference as a matter of practice, just a few days before the death of the decedent infant Pan, it was determined that Defendants including agents at CPSSM and CFSSM were informed that Ms. Navarra was exhausted and not coping with the placement and in need of respite. In other words, a few days before infant decedent Pan's tragic passing, Defendants had express knowledge that infant Brian Pan was under the care of a foster parent with known instances of incompetence, failure to follow directions and protocol provided by Defendants, and who was showing signs of exhaustion in connection with the care of two fragile infants who

could not do anything for themselves and who were utterly dependent on her and her husband. Ms. Navarra and her husband were aware of this dire situation, and the Defendants were aware of it. No one did anything about it despite mandatory requirements, as set forth below, that they address the issues.

e.  Had Defendants followed mandatory requirements to inspect the foster home either prior to placement to assess suitability or during the placement when the concern for exhaustion was raised or to periodically evaluate safety, they would have determined that there was no bedroom or suitable room for the twins to sleep, and that there were insufficient sleep accommodations and/or equipment for newborn twins. In addition, during this time period, there is evidence that Defendants staff were not exercising appropriate care over the placement, failing to provide correct medical information to the foster mother and failing to ensure she understood or had received the correct medical information, and also failing to return calls for extended periods of time about these kinds of concerning issues. In fact, email exchanges showed that Defendants had literally lost track of who was supposed to be monitoring the placement and it is alleged that they essentially conceded as such. When asked about the lack of response during the relevant time period, one social worker cavalierly responded that she was sorry and that she was out of the office, revealing that Defendants had no organized system for the mandatory monitoring and evaluation of safety issues at the foster home.

f.  It has been determined that the specific facts concerning the death of the infant decedent Pan were as follows:

   i.  When the police arrived, Ms. Navarra was distraught. She confirmed there was no bedroom for the twins, and confirmed they were using car seats and the couch for sleeping arrangements, and confirmed that she was indeed alone caring for the twins overnight. Other reports confirmed the other foster parent regularly did not participate in the overnight care of the twins, instead going to sleep because he had to wake to attend to duties with the teenage foster children as well.

ii.    Against this backdrop, she narrated that the last thing she remembered was that, at 0330 AM, on 9/13/2021, she gave decedent infant Pan a bottle and he burped. He then was observed to have dozed off, and was alive and well.

iii.    Consistent with the prior reports of her being exhausted and needing respite, she negligently chose to stay in the chair where she too dozed off. She thus failed to position the infant in a safe position, and failed to position herself in a safe position. When police questioned her, she could not tell them what time she fell asleep. She also expressed frustration with CPS, stating that she had been up all night every night with the twins since she got them. A witness teenage foster child told the police that the foster parents were stressed taking care of both babies. (It was later learned the Navarras claim to have acted as foster parents for 100 children over 30 years.)

iv.    When asked to demonstrate what happened, Ms. Navarra actually demonstrated the negligent manner in which she positioned the decedent infant Pan before she uncontrollably dozed off. Rather than laying him down in a safe position and ensuring that she was not in a position to crush him, she chose to instead extend her left arm and place the baby between her body and her left arm, with the baby's head and mouth squeezed between her breast and arm.

v.    According to James Navarra, the foster father, neither CPSSM nor CFSSM gave any specific instructions for the care of the children. Though both parents were charged with the care of the children, he noted that he would customarily go to sleep, leaving Ms. Navarra as the sole caretaker of the twins overnight, noting that they were known to wake every three hours. This should have been known to Defendants, but they failed to investigate or evaluate how the Navarras would take care of two twins because the placement was planned for care of only one infant at a time.

vi.   On the morning decedent infant Pan was found deceased, James Navarra is alleged to have told police that when he woke in the morning, Alice Navarra was found in an "uncomfortable position" and the baby was on her lap—but he was concerningly evasive and vague as to what the position was. Whatever the position was, it prompted him to want to move the infant, at which time he immediately felt the decedent infant Pan's body to be rigid. He had observed the fingers to be blue, and during CPR, a pink air bubble appeared in the infant's nose. They attempted CPR while police arrived in response to their 911 call.

vii.   A Pacifica Police Department officer observed the autopsy of Brian Pan, and it is alleged that said police officer noted that he was informed by the pathologist that the pathologist did not believe Brian Pan's death resulted from the previous dropping incident.

viii.   The Autopsy Report, which was not released until months later, it is alleged, confirmed positional/compression asphyxia. Given James Navarra's description of how he found his wife and the infant, it is clear decedent infant Pan was crushed and suffocated by Alice Navarra until he died. He would have experienced pain as he tried to breathe, but had no way of defending himself. The County had placed him with a foster mother with a known recent past record of failing to follow medical protocol and even common sense protocol for a child, and had allowed him to remain in a home where there were known issues of the allegedly incompetent and insubordinate foster parent being also exhausted. In addition, the foster parents knew or should have known that the foster mother was in need of respite, and they also knew she was not equipped or prepared to take care of twins all night, every night, for weeks.

**FIRST CAUSE OF ACTION**

**WRONGFUL DEATH**

**[California Code of Civil Procedure § 377.60]**

**(By Plaintiffs against All Defendants)**

23.     Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

24.     Plaintiffs as surviving heirs of their son Brian Pan assert a wrongful death action against all Defendants pursuant to § 377.60 et seq. of the California Code of Civil Procedure. Said claim is based upon the fact that the negligent, reckless, and wrongful acts and omissions of Defendants, as alleged herein, were a direct and legal cause of decedent infant Brian Pan's death.

25.     Decedent infant Brian Pan's death was not unexpected and was entirely preventable and should have never happened. Defendants' records are alleged to show that Defendants negligently placed two twins in the Navarra home knowing the foster parents had not agreed to accept two twins, knowing that Ms. Navarra had defied direct orders and endangered another child just a little over a year before that. The records show that Defendants failed to act when they became aware that Ms. Navarra was exhausted, and also failed to train and/or supervise the Navarras in the higher level of care required for caring for twins, which would have two adult supervision overnight or at the very least specific protocol to be followed by Ms. Navarra on how to position a baby safely when the adult caretaker is at risk for falling asleep or chooses to get some rest. It is also alleged that the infant Pan's placement was not properly initially assessed for safety or reassessed, and that numerous unsafe conditions, including lack of proper sleeping equipment, accommodations, and lack of appropriate participation by both foster parents in the overnight care of the twins and exhaustion of Ms. Navarra, could have been identified and provided immediate basis for transfer out of the twins to another more suitable foster home.

26.     As a result of the above acts and omissions of Defendants, infant Brian Pan was suffocated to death. His tiny body and airway were crushed by the body of Alice Navarra who fell asleep on him while Mr. Navarra slept comfortably, as he always did, upstairs.

27.     The infant decedent Brian Pan's injuries, according to the final autopsy report, were consistent with positional asphyxia, which was consistent with the acts, conduct and evidence of the foster parents suggesting the same.

28.     As a direct and proximate result of Defendants' conduct, as alleged above, Plaintiffs have been deprived of the life-long love, companionship, comfort, society, and care of Brian Pan, and will be deprived as such for the remainder of their natural lives, and in the case of Plaintiff He, she was deprived of the most precious mother child bonding possible during the early days of his life.

29.     Plaintiffs are also claiming all awardable wrongful death damages under the Fourteenth Amendment claims, and also under their state law claims for negligence and civil rights violations.

**SECOND CAUSE OF ACTION**

**WRONGFUL DEATH SOUNDING IN NEGLIGENCE**

**(By Plaintiffs Against All Defendants)**

30.     Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

31.     Defendants had a legal duty to Plaintiffs the moment they decided to seize all of Plaintiffs' children and place them in foster care. Specifically, Defendants had an unequivocal duty to place him in an appropriate foster home and to have assessed that home as such, which they did not do properly or at all either initially or on an ongoing basis. Defendants knew of the previous misconduct of Ms. Navarra, but still allowed her to continue to be a foster parent, and they also knew that she was exhausted while caring for the Pan twins, but failed to intervene. Because of Defendants' lack of assessment or reassessment upon learning of specific issues such as exhaustion, they failed to identify that the foster home was not set up in a manner to provide safe sleeping arrangements for newborn twins. Defendants also failed to provide the foster parents with adequate training for how to take care of two newborn twins. Defendants failed to take appropriate action as mandated by the Welfare and Institutions Code sections and/or Department of Social Services ("DSS") regulations and/or other codes set forth below.

32.     Defendants and DOES 1-100, despite receiving documented reports suggesting Ms. Navarra's lack of fitness as a foster parent for newborn twins and documented reports of her being exhausted, negligently investigated or failed altogether to investigate these reports, and negligently failed to intervene, pursuant to statutes as set forth below.

33.     Defendants' conduct specifically violated Welfare and Institutions Code § 16501 (a)(1)(4) because they failed to "ensure adequate care" of Brian Pan, resulting in his death, and instead of achieving safety and well-being, killed Brian Pan.

34.     Defendants' conduct specifically also violated Health and Safety Code § 1505.2 because individuals responsible for assessing the suitability and adequacy of the foster home failed to do so, and indeed the foster parents had only been prepared for one newborn and were shocked and surprised when they received twins. They were not prepared to take care of twins, and Defendants should have determined as such and taken appropriate steps to either place them elsewhere. When the foster mother's exhaustion was disclosed a few days before Brian Pan's death, Defendants had a mandatory duty to intervene to protect the twins, and the foster mother had a mandatory duty to take actions to ensure her exhaustion was addressed.

35.     Defendants' conduct also violated Title 22, Division 6, Chapter 9.5 Foster Family Homes Regulations ("Foster Family Home Regulations) § 89228(b) because they failed to assess the physical features of the home and the capacity of the foster parents to realize that the home was not equipped with adequate safe sleeping provisions or caretakers for the twins to ensure that the twins were not at risk for suffocation.

36.     Defendants' conduct also violates Cal. Code. Regs. Title 22 ("DSS Regulation") § 89387 which requires that "[t]he caregiver shall provide each infant with a safe and sturdy bassinet or crib, appropriate to the age and size of a 'child.'" On the evening of decedent infant Pan's death, a couch and a car seat were used for the twins. Defendants' conduct also violates DSS Regulation § 89244 which provides that "[t]he Department or licensing agency shall have the authority to inspect and evaluate the home as specified in Health and Safety Code §§ 1533, 1534, and 1538." Health and Safety Code § 1533 provides that "any duly authorized officer, employee, or agent of the State Department of Social

Services may . . . enter and inspect any place providing personal care, supervision, and services at any time, with or without advance notice, to secure compliance with, or to prevent a violation of any provision of this chapter." Health Safety Code § 1534(a)(2)(A) requires Defendants to ensure the quality of the care provided, and specifically states that the department may inspect these facilities **"as often as necessary** [emphasis added] to ensure the quality of care being provided." Defendants failed shockingly in connection with all of their obligations under these vital, well known, and necessary regulations. Indeed, it was known that the foster parents were not expecting twins, and thus Defendants' agents should have taken steps to ensure that their home was properly equipped to provide a safe condition for decedent infant Brian Pan. It was expressly known that the foster mother was exhausted and was caring for four children at that time just days before Brian Pan's death, and that she was elderly and potentially having to work under conditions jeopardizing her physical ability to get adequate rest to care for the children. No one from Defendants investigated when they learned that she was in need of respite—had they investigated, they would have found out that she was regularly sleeping with the children with unsafe conditions and with no or minimal assistance from her other foster parent during the overnight hours. He slept every night and left her to care for both twins every night, including on the night in question. In addition, they would have found out that she was using a car seat and/or herself on a couch in a living room (i.e., allowing the infants to sleep on her in an inclined position while she also slept) instead of using proper cribs and bassinets and proper positioning. The duties of Defendants to check on the conditions of the foster home and to verify the competence, fitness, fatigue and physical state of the foster parents, and to intervene as needed, was not one requiring an exercise of discretion but rather was mandated as set forth above and exactly the kind of oversight which Defendants and their social workers were required to exercise over the acts of the foster parents to ensure the safety of the children. Because the duties were mandatory, and not discretionary, and in particular the County and its social workers had an absolute duty once they determined there was a question with caregiver fatigue to address it immediately given the caregiver was responsible for two defenseless newborns, Defendants do not benefit from any immunity under § 820.2 of the Government Code or otherwise.

37.     These negligent and reckless acts and omissions were a substantial factor and a legal cause of the damages and injuries sustained by decedent infant Brian Pan and the resulting injuries to Plaintiffs, and the legal cause of decedent's death as alleged in this complaint. Had Defendants fulfilled their mandatory and legal duty of care, the infant Brian Pan would not have been harmed.

38.     Additionally, under California Evidence Code § 669, the negligence of Defendants, and their employees or agents, may be presumed for the reason that:

a.   Defendants, and each of them, violated statutes which required mandatory actions to address and resolve any safety concerns at the foster home, including but not limited to violating DSS Regulations §§ 89244, 89228, and 89387, among others, and §§ 1533 and 1534 of the Health and Safety Code, among others;

b.   The injuries to decedent infant Brian Pan were of the nature which the statutes are designed to prevent; and

c.   Decedent infant Brian Pan was a member of a class of persons for whose protection these statutes were adopted.

39.     As a direct and proximate result of the acts and omissions of Defendants, including its employees or agents, and each of them, as alleged herein, decedent infant Brian Pan suffered injuries including, but not limited to, physical and mental pain and suffering, physical injuries, and future loss of earnings capacity, in an amount not yet ascertained, but which exceeds the minimum jurisdictional limits of the Court.

40.     As a direct and proximate result of the act and omissions of Defendants, including its employees or agents, and each of them, as alleged herein, Plaintiffs He and Pan suffered injuries including mental pain and suffering, loss of companionship, and loss of future support as a result of the loss of their son, in an amount not yet ascertained, but which exceeds the minimum jurisdictional limits of the Court.

**THIRD CAUSE OF ACTION**
**WRONGFUL DEATH SOUNDING IN NEGLIGENT SUPERVISION**
**(By Plaintiffs against County Entity Defendants)**

41.     Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

42.     At all times mentioned herein, Defendants were under a duty to supervise the conduct of its social workers and employees and foster parents to enforce those regulations necessary, including DSS Regulations §§ 89244, 89228, and 89387, among others, and §§ 1533 and 1534 of the Health and Safety Code, among others, for protecting the decedent infant Brian Pan from abuse or dangerous conditions as established herein.

43.     Defendants were negligent and careless in that they failed to properly train and supervise their employees to recognize when a foster parent should not be used for placement, or when a child should be removed from placement, and failed to directly supervise, inspect, evaluate, and/or correct the conduct of the foster parents and/or social workers in connection with the care of the twins. Furthermore, Defendants negligently entrusted its employees or agents with exercising the laws for the protection of decedent infant Brian Pan.

44.     Defendants negligently failed to supervise their agents, employees, and foster parents appropriately so as to prevent the type of violations of policy and statutory laws and regulations as alleged herein that led to the injuries which killed infant Brian Pan.

45.     Defendants negligently failed to supervise their agents, employees, and foster parents so as to prevent the types of incidents herein alleged, failing to properly train and to supervise the training of social workers and/or foster parents in the safe handling of children placed under the care of foster parents.

46.     Because those duties to ensure a safe foster care placement for decedent infant Pan were mandatory and not discretionary, Defendants do not benefit from any claims of immunity when exercising those duties and had an absolute duty to ensure that their employees and agents and foster parents were properly trained to fulfill these mandatory duties. There is significant evidence, including

past documented evidence of social workers leaving voicemail messages instead of directly intervening on serious medical issues with other children, and including evidence in this specific case of a total failure to intervene on the known exhaustion of the foster mother and total failure to properly assess the foster home for initial or continued placement of twins, and including a total lack of proper monitoring, training and supervision of the foster parents, that Defendants showed deliberate indifference in their failure to supervise and train to ensure the safety of decedent infant Brian Pan.

**FOURTH CAUSE OF ACTION**

**WRONGFUL DEATH SOUNDING IN NEGLIGENT HIRING AND RETENTION**
**(By Plaintiffs against County Entity Defendants)**

47.     Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

48.     As agencies working with children, Defendants, including specifically its CPSSM and CFSSM, were entrusted with the care of minor children within their system who then were placed in foster homes that were supposed to be appropriate and safe for the care of the children in question.

49.     At no time during the periods of time alleged did Defendants have in place a system or procedure to reasonably select, investigate, supervise, and monitor its employees, and/or in the alternative they failed to do so.

50.     In addition, at no time during the periods alleged did Defendant County or the other Defendants have in place a system or procedure to reasonably select, investigate, monitor, remove, or supervise its foster parents, including the Navarras, who were directly responsible for the twin Pan boys including decedent infant Pan who died in the foster care system, and/or in the alternative they deliberately and/or as a matter of regular practice failed to follow any such system.

51.     Defendants were, or had reason to be, aware of and understand how vulnerable newborn infant twins could be in a foster home, and should have known they would need to place the twins in a home with an appropriate track record for consistent safety and with knowledge and training and appropriate resources and rest to ensure safe handling of children so young that their every move depended on an adult or caretaker. They had a duty to retain and supervise social workers and staff who

could make an appropriate placement decision, monitor the placement, and decide to withdraw a child from placement if necessary, consistent with the statutory obligations set forth in DSS Regulations §§ 89244, 89228, and 89387, among others, and §§ 1533 and 1534 of the Health and Safety Code, among others. They had a duty further to use a licensed foster parent who was properly trained, qualified, and without a recent event documenting neglect and insubordination and failure to follow protocol.

52.     Defendants were therefore put on notice, and had reason to know that the foster home in question and social workers charged with supervising that home, had previously engaged in dangerous and inappropriate conduct, and that it was, or should have been foreseeable, that they would engage in dangerous and inappropriate conduct again. The incident in 2020 where a social worker left a voicemail rather than directly intervene on Ms. Navarra, and the specific documented instances in this case of non-response, incorrect information, failure to monitor the home environment, and utter failure to address the known exhaustion issue, show a continued pattern and practice of Defendants' staff not properly supervising foster home care and showing deliberate indifference as such. The specific incidents described regarding Ms. Navarra show she had a documented record of recent poor performance, safety issues, and questions of fitness and exhaustion, but was still used and allowed to endanger and ultimately kill the decedent infant Pan. Other records show that social workers specifically tasked with monitoring the infant decedent were regularly absent for days on end, failed to return critical phone calls, and were overall failing to monitor whether or not the Navarras were in compliance with their duties. In addition, there was documented evidence that the Navarras did not have pertinent medical information about the twins or accurate information about their health history or needs or adequate information about sleep hygiene needed for a caregiver engaged in regular care of twins every night, but none of these issues including the express acknowledgement of the need for respite were acted upon such that Defendants could properly evaluate the capacity and fitness of the Navarras to care for or continue to care for two newborn twins.

53.     Defendants knew that the Navarra home already had a placement taken from them, knew that one of its social workers had used a voicemail to leave a critical message for a previous child rather than personally following up on it as they should have, and knew that Ms. Navarra was overwhelmed

and exhausted just days before the infant decedent's death. Defendants also knew that they had absent social workers and staff who were failing to return calls, and failing to follow up on appropriate assessment of the placement in general, and were even expressly told so by counsel for the parents, but continued to show deliberate indifference in their handling of the twins' placement.

54.     Defendants knew all of this, but still allowed the decedent infant Pan to remain under the care of said social workers, staff, and the foster parents.

55.     Defendants' conduct was therefore a breach of their duties to Plaintiffs and the decedent infant Brian Pan, and therefore endangered the decedent infant Brian Pan and ultimately killed him.

**FIFTH CAUSE OF ACTION**

**WRONGFUL DEATH SOUNDING IN VIOLATION OF CIVIL RIGHTS**

**[California Civil Code § 52.1 and 42 U.S.C. § 1983 Violation of Fourteenth Amendment Rights]**

**(By Plaintiffs against All Defendants)**

56.     Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

57.     This action is brought pursuant to California Civil Code § 52.1. This cause of action is to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, or practice of usage, of rights, privileges, and immunities secured by the Constitutions of the United States and California including, but not limited to, the right to be free from violence and threats of violence.

58.     This action is also brought pursuant to 42 U.S.C. § 1983 for violation of Fourteenth Amendment rights of Plaintiffs and the decedent infant Pan, specifically the rights of due process and equal protection.

59.     Plaintiffs are informed and believe, and thereon allege, that Defendants and each of them, seizing infant Pan from the custody of his lawful parents (including specifically Plaintiff Yan He who remained able to take care of him) and then subjecting decedent infant Brian Pan to unsafe conditions which caused his violent and painful death by suffocation, violated the decedent infant Brian Pan's  civil rights and subjected the decadent infant Brian Pan to a horrible and painful death by suffocation, and subjected Plaintiffs to the deprivation of the life, companionship and care of their son.

60.     During all times mentioned herein, Defendants, separately and in concert, acted under color and pretense of law, under color of the statutes, ordinances, regulations, policies, practices, customs, and usages of the State of California and County of San Mateo. Each of the Defendants, separately and in concert, deprived Plaintiffs and decedent infant Pan of the rights and privileges secured to them by the Civil Code as alleged herein, ultimately ignoring their duties to properly monitor and/or operate the foster home and conduct of the foster parents and directly placing decedent infant Brian Pan in a condition (i.e. under the care of an undertrained, exhausted foster parent without sufficient resources or an appropriate safe sleeping environment) that caused his violent death by suffocation.  Infant decedent Brian Pan suffered violent suffocation by being crushed, causing hemorrhaging and edema to his tiny lungs and in his airways.

61.     Plaintiffs and decedent infant Pan were subjected to the deprivations alleged herein as a result of the failure of Defendants to properly train their employees or agents, to properly supervise the foster home in which he was placed, to properly train the foster parents into whose care they placed decedent infant Pan, and to remove him from that foster home when he was in obvious danger due to the exhaustion and dangerous track record of the known foster parent, and also as a result of the unsafe conduct of the foster parents.

62.     As a direct and proximate result of the acts and omissions of Defendants, including its employees or agents, as alleged herein, decedent infant Brian Pan suffered injuries including, but not limited to physical and mental pain and suffering, physical injuries, and ultimately death, and future loss of earnings and earnings capacity, in an amount not yet ascertained, but which exceeds the minimum jurisdictional limits of the Court. Plaintiffs also suffered injuries, including mental pain and suffering, loss of companionship and loss of future support of their son.

63.     As a further direct and proximate cause of the acts alleged herein, Plaintiffs seek attorneys' fees as provided for in California Civil Code § 52.1(i) in an amount to be shown according to proof at trial.

64.     In addition, Defendants may be held liable for violation of decedent infant Pan's civil rights under 42 U.S.C. § 1983 upon a showing: (1) decedent infant Pan and/or Plaintiffs were deprived

of a constitutional right; (2) Defendants had a policy; (3) Defendants' policy amounted to a deliberate indifference to infant decedent Pan's constitutional rights and/or to Plaintiffs' constitutional rights; and (4) the policy was the "moving force behind the constitutional violation.'"  As such, it is alleged here that:

    a.   The infant decedent Pan was deprived of his Fourteenth Amendment rights, as were Plaintiffs as his parents because infant decedent Pan was literally deprived of his life, and Plaintiffs were deprived of their son. As recognized by multiple courts, the right to personal security "is a 'historic liberty interest' protected substantively by the Due Process Clause." Because Defendants removed decedent infant Brian Pan from his mother's custody, Defendants thereafter had an affirmative duty to avoid placing him a position of known danger. Defendants here placed him in a position of known danger, placing him with a foster parent with known history of not caring appropriately for young children and/or in unsafe conditions where a foster parent was exhausted and unable to safely care for him and utterly failed to assess initially and on an ongoing basis the foster home conditions including the exhaustion of Ms. Navarra, a foster parent who was expressly identified as requiring respite.

    b.   Despite having a clear duty under state law to inspect the foster home when there were known concerns in accordance with DSS Regulations §§ 89228, 89244, and 89387, among others and §§ 1533 and 1534 of the Healthy and Safety Code, among others, Defendants in this instant repeatedly ignored such provisions as evidenced by the fact that: (i) they ignored the foster mother's prior safety record requiring removal of a child and placed two twins under her care without proper notice on August 10, 2021; (ii) they ignored the clear evidence of fatigue requiring respite and intervention; (iii) as a matter of pattern and practice, because they were longstanding foster parent providers, Defendants essentially deliberately ignored their obligations to carefully monitor and evaluate their present fitness to care for two twins safely, and also had shown a pattern and practice of not carefully monitoring or evaluating the foster home at time of placement or thereafter,

expressly shown here by failure to return calls, failures to investigate obviously concerning issues such as fatigue and intervene in a timely manner after discovery, failure to investigate other obviously concerning signs such as the foster parent not being aware of basic care issues for the twins, failure to communicate on important medical information including scheduled medical appointments, among others.

c. Defendants' conduct described above constituted deliberate indifference, as they as a matter of practice did not properly investigate the initial or ongoing capacity of existing licensed foster care homes, and despite actual notice of issues, failed to properly investigate the issues with the Navarra home or do anything to remedy them.

d. Had the Defendants not shown this deliberate indifference, and the Navarras been replaced as the foster parents when it was identified there was a need for respite or had they been excluded as potential foster parents at the time of the initial assignment or had they been properly trained and unsafe conditions remedied, infant decedent Pan would be alive today, growing up to be a healthy little boy like his other two brothers.

**SIXTH CAUSE OF ACTION**

**SURVIVAL ACTION**

**[California Code of Civil Procedure § 377.34]**

**(By the Estate of Decedent Infant Brian Pan against All Defendants)**

65.   Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

66.   This cause of action is brought by the Estate of Decedent Infant Brian Pan, based on violations of California Civil Code § 52.1 and violations of his Fourteenth Amendment rights and pursuant to § 377.34 of the California Code of Civil Procedure.

67.   As a proximate result of the conduct of Defendants as alleged, decedent infant Pan suffered intense physical and emotional pain, anguish, distress, despair, and was crushed and suffocated and defenseless without any way to defend himself. In the course of being crushed and suffocated, even

as an infant, he would have felt severe pain and suffering as he passed. The Estate of Brian Pan is therefore claiming survival damages under their federal and state law claims.

**WHEREFORE**, PLAINTIFFS pray for a jury trial and for judgment against Defendants as follows:

FOR ALL CAUSES OF ACTION

1. For past, present, and future general damages in an amount to be determined at trial, in excess of $50 Million.

2. For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages, and others, in an amount to be determined at trial;

3. Any appropriate statutory damages and/or any other kind of damages awardable as plead above;

4. For punitive damages as to any Defendants and/or DOES identified in discovery to have contributed to the death of decedent infant Pan and who engaged in conduct for which punitive damages are appropriate, including for violation of California Civil Code § 52.1.

5. For costs of suit, and also for attorneys' fees awardable under any applicable statute including under California Civil Code § 52.1;

6. For interest as allowed by law; and

7. For such other and further relief as the court may deem proper.

DATED: June 20, 2023                    Respectfully Submitted,

SANJIV N. SINGH, A PROFESSIONAL LAW CORPORATION

Sanjiv N. Singh, Esq.

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORPORATION

Michael B. Indrajana, Esq.

Attorneys for Plaintiffs YAN HE and BIN PAN, individuals and successors in interest to the ESTATE OF BRIAN PAN